<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KENNETH LORENZO,<br><br>                      Plaintiff,<br><br>      v.<br><br>HERITAGE POOL SUPPLY GROUP,<br><br>                      Defendant. | Civil Action No. 24-10539 (GC) (JTQ)<br><br><u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

        **THIS MATTER** comes before the Court upon Defendant Heritage Pool Supply Group's

Motion to Compel Arbitration.   (ECF No. 24-1.)   Plaintiff Kenneth Lorenzo opposed, and

Defendant replied. (ECF Nos. 24-5, 24-7)   The Court has carefully reviewed the parties'

submissions and decides the matter without oral argument pursuant to Federal Rule of Civil

Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other

good cause shown, Defendant's Motion is **GRANTED**.

I.      **BACKGROUND**

    A.      **Factual Background[1]**

In February 2023, Plaintiff began his employment with Defendant as an Assistant Branch Manager at Defendant's store in Lakewood, New Jersey.  (ECF No. 24-1 at 9.)[2]  Defendant is a pool supply distributor.  (ECF No. 24-5 at 6.)  Plaintiff was promoted to Branch Manager in September 2023.  (ECF No. 24-1 at 9.)  On February 21, 2024, Defendant terminated Plaintiff's employment.  (*Id.* at 15.)  Plaintiff alleges his termination was due to complaints he made regarding employee safety.  (ECF No. 1 at 10-11.)

    1.      *The Mutual Arbitration Agreement*

Defendant utilized a third-party platform for human resources tasks and documents called "Workday."  (ECF No. 24-1 at 12.)  Workday is a secure platform, and employees have their own individual login and password information.  (*Id.*)  Within the platform, employees can only access

---

[1]      On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party."  *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).  The Court notes that neither party has complied with Local Civil Rule 56.1(a), which requires parties to furnish statements setting forth material facts in separately numbered paragraphs with record citations.  However, "the [c]ourt, in the exercise of its broad discretion, does not deny the parties' motions based upon failure to comply with Local Rule 56.1."  *Minden Pictures Inc. v. Ammoland, Inc.*, Civ. No. 22-76, 2023 WL 4288332, at *1 n.1 (D.N.J. June 30, 2023).  Instead, the Court derives the facts in this action from Defendant's "Statement of Material Facts and Procedural History" and Plaintiff's "Statement of Facts" included in the parties' briefing.  (ECF No. 24-1 at 9-16; ECF No. 24-5 at 4-8.)  *See Calabrese v. Tierney*, Civ. No. 19-12526, 2024 WL 448303, at *1 n.1 (D.N.J. Feb. 6, 2024) ("Notwithstanding the parties' failure to comply with the Local Rules, the Court has ventured to parse the record to identify any facts in dispute.").  Unless otherwise noted, the relevant facts are undisputed or supported by record evidence.

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

information related to themselves.  (*Id.*)  Workday displays a "Task List" when employees log in, which displays outstanding action items for that employee.  (*Id.*)

On October 5, 2023, Defendant informed Branch Managers, including Plaintiff, via email that it would require all employees to execute the Mutual Arbitration Agreement (MAA) as a condition of continued employment.  (ECF No. 24-1 at 9.)  The email stated that the MAA will be launched in Workday as a task assigned to employees.  (*Id.* at 10.)  Plaintiff read this email.  (*Id.*)  On October 17, 2023, Defendant sent the MAA to the Workday inboxes of all non-union employees, including Plaintiff.  (*Id.* at 12; ECF No. 24-5 at 4.)  Employees were directed to submit their acceptance by checking an "I Agree" box within Workday.  (ECF No. 24-1 at 13.)  However, the notification also included the statement that "[y]our decision to continue your employment with SRS/ Heritage for 30 days after being provided this notice and the attached Arbitration Agreement means that you are accepting this Arbitration Agreement even if you do not click 'I Agree.'"  (ECF No. 24-1 at 13; ECF No. 24-3 at 45 (screenshot of Workday notification).)  Plaintiff admits the MAA was sent to his Workday inbox and was listed  as an open task.  (ECF No. 24-1 at 14; ECF No. 24-2 at 44:1-13.[3])  On October 20, 2023, an Area Manager sent a second email regarding the MAA noting that it needed to be signed within 30 days.  (ECF No. 24-1 at 11.)  Plaintiff read this email.  (*Id.*)  Plaintiff testified that as of October 20, "he understood that the MAA had a 30-day automatic acceptance provision" but he had decided not to sign it because he believed the MAA would not be enforceable.  (*Id.* at 12.)  The parties do not dispute that Plaintiff reviewed the MAA.  (*See* ECF No. 24-5 at 4.)

The MAA, in relevant part, states that:

---

[3]    Page numbers for transcripts appended as exhibits to the parties' briefs (*see* ECF Nos. 24-2, 24-3, 24-6) refer to the internal page and line numbers stamped by Court Reporter rather than the page numbers stamped by the Court's e-filing system.

> Except for the disputes specifically identified in the "Excluded Claims/Disputes" section below, this Agreement applies to any and all existing or future disputes between you and the Company so that you are bound to arbitrate all disputes, including any claims and disputes regarding your recruitment, employment and/or separation of employment with the Company.

(ECF No. 24-3 at 11.)  It also includes a delegation clause specifying that "the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or waiver of this Agreement."  (*Id.* at 12.)  Lastly, the MAA specifies that "[e]mployment or continued employment is contingent on acceptance of this Agreement. Employee accepts this Agreement by accepting employment with the Company, or by continuing employment with the Company for 30 days after the Company provides notice of this Agreement[.]"  (*Id.* at 15.)  Plaintiff continued his employment with Defendant for longer than 30 days after he received the MAA.  (ECF No. 24-1 at 14-15.)

### 2.    *Events of November 13, 2023*

On November 13, 2023, a new employee, Lyndsey Boyle, started working for Defendant. (ECF No. 24-1 at 16; ECF No. 24-5 at 5.)  Boyle's Workday account shows that she executed her MAA on November 9, 2023, before her start date.  (ECF No. 24-1 at 16; ECF No. 24-5 at 5.) Plaintiff testified he was unaware Boyle had already executed documents via Workday.  (ECF No. 24-5 at 5.)  On the morning of November 13, 2023, Plaintiff onboarded Boyle; this was his first time onboarding another employee.  (*Id.* at 5, 6.)  At that time, he was logged into his Workday account, and testified "that he turned the computer toward Ms. Boyle so she could complete her Tasks."  (*Id.* at 5.)  Records show that the MAA was executed on Plaintiff's Workday account on November 13, 2023.  (ECF No. 24-1 at 13.)  The "Signature Date" for Plaintiff's execution of the

4

MAA is recorded as 8:04 a.m. on November 13, 2023.[4]  (ECF No. 24-3 at 43.)  Plaintiff testified that he did not electronically sign the MAA from his Workday account on November 13.  (ECF No. 24-5 at 5-6.)  Plaintiff now argues that Boyle inadvertently executed the MAA within his Workday account when Plaintiff was walking her through employment documents.  (*Id.* at 9.)  Defendant disputes Plaintiff's argument and testimony, pointing to Boyle's contrary testimony that Plaintiff did not show Boyle any documents on his computer, and she did not enter any information or sign documents on his computer on November 13.  (ECF No. 24-1 at 16.)  Plaintiff was terminated approximately three months later.  (*Id.* at 15.)

### B.    Procedural Background

On October 9, 2024, Plaintiff filed his original Complaint in the Superior Court of New Jersey, Somerset County.  (ECF No. 1 ¶ 1; *id.* at 9-21 (Complaint).)  Plaintiff asserts two causes of action; Count One alleges Defendant unlawfully retaliated against Plaintiff in violation of the New Jersey Conscientious Employee Protection Act (CEPA), (Complaint ¶¶ 74-76), and Count Two alleges wrongful discharge in violation of the public policy of New Jersey, (*id.* ¶¶ 77-80).  Plaintiff seeks compensatory damages, punitive damages, attorneys' fees and costs and prejudgment interest.  On November 18, 2024, Defendant removed the matter to this Court based on diversity jurisdiction.  (ECF No. 1.)  After Defendant indicated its intent to file a Motion to Compel Arbitration (ECF No. 6), the Court ordered the parties to conduct limited discovery into the issue of arbitrability (ECF No. 9).  Defendant's Motion followed.

---

[4]    Although the time stamp was recorded as 7:04 a.m., Plaintiff testified that these time stamps are recorded in central time but he was on eastern time.  (ECF No. 24-3 at 43; ECF No. 24-6 at 83:11-19.)

## II.    LEGAL STANDARD

The Federal Arbitration Act (FAA) "establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)). "The Third Circuit has adopted a two-tiered framework for assessing motions to compel arbitration," under which "a court must ensure that: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the agreement's scope." *Matczak v. Compass Grp. USA, Inc.*, Civ. No. 21-20415, 2022 WL 557880, at *1 (D.N.J. Feb. 24, 2022).

District courts can evaluate motions to compel arbitration as either motions to dismiss pursuant to Rule 12(b)(6) or motions for summary judgment pursuant to Rule 56. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 317-18 (3d Cir. 2024); *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324-25 (3d Cir. 2022). To determine which standard is appropriate, the Third Circuit set forth the following test:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations omitted). "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019).

6

The parties do not indicate in their briefs whether this Motion should be evaluated as a motion to dismiss or a motion for summary judgment. (*See* ECF Nos. 24-1, 24-5.) Because the Complaint "does not set forth clearly that the claims are subject to an arbitration agreement" and "plaintiff rebuts the motion to compel 'with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement,'" *Young*, 119 F.4th at 319 (quoting *Guidotti*, 716 F.3d at 774), and the parties engaged in and rely upon discovery regarding arbitrability, the Court must apply the Rule 56 standard. *See Aiello ex rel Landers v. AHC Florham Park LLC*, Civ. No. 20-7169, 2021 WL 118931, at \*2 (D.N.J. Jan. 13, 2021) ("After the parties engage in limited discovery, the court may entertain a renewed motion to compel arbitration, under the motion for summary judgment standard.") (internal quotation marks and citation omitted); *Matczak*, 2022 WL 557880, at \*2.

Under Rule 56, summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). The Court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an

7

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)).

## III.    **DISCUSSION**

Congress enacted the FAA, 9 U.S.C. § 1 *et seq.*, to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  When there is a contract between the parties that provides for arbitration, there is "an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  However, "[n]otwithstanding the well-established policy in favor of arbitration, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Arakelian v. N.C. Country Club Ests. Ltd. P'ship*, Civ. No. 08-5286, 2009 WL 4981479, at *7 (D.N.J. Dec. 18, 2009) (quoting *AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986)).  "In determining whether the FAA requires that arbitration be compelled in this matter, [the court] must resolve three issues: (1) whether the FAA governs the transaction/agreement between the parties; (2) whether the agreement at issue requires the parties to arbitrate their disputes; and (3) whether the dispute in question is covered by the arbitration clause in the agreement." *Port Erie Plastics, Inc.*

8

*v. Uptown Nails, LLC*, 350 F. Supp. 2d 659, 663 (W.D. Pa. 2004), *aff'd,* 173 F. App'x 123 (3d Cir. 2006).

Defendant argues that the MAA is valid and enforceable, and the Court must stay this litigation and compel Plaintiff to submit his claim to arbitration.  (ECF No. 24-1 at 17.)  Plaintiff responds that the MAA is unenforceable because Plaintiff is a "transportation worker" exempted from the FAA and even if Plaintiff is not exempted from the FAA, there is no valid agreement to arbitrate as Plaintiff did not execute the MAA.  (ECF No. 24-5 at 4.)

### A.    Applicability of the FAA

As a preliminary matter, the Court must consider whether the FAA applies to the MAA. *Singh*, 939 F.3d at 215 ("[C]ourts must be the ones to determine whether an agreement is excluded from FAA coverage even where there is a delegation clause.") (citing *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019)).  Section 1 of the FAA "provides the Act shall not apply 'to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'"  *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (quoting 9 U.S.C. § 1).  Where an employee is not a seaman or railroad employee,[5] to decide whether the employee is a "worker engaged in foreign or interstate commerce" such that the FAA exemption applies, courts "begin by defining the relevant class of workers to which [the plaintiff] belongs" and then "determine whether that class of workers is engaged in foreign or interstate commerce."  *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (internal quotation marks omitted).  The exemption "focuses on the performance of work rather than the industry of the employer.  The relevant question was what the employee does at the [employer], not what the [employer] does generally."  *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 247 (2024).  The Third Circuit has

---

[5]    It is undisputed that Plaintiff is not a seaman or railroad employee.

9

further clarified that "the only class of workers included within the exception to the FAA's mandatory arbitration provision are those employed *directly* in the channels of commerce itself." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 227 (3d Cir. 1997) (emphasis in original). The party opposing arbitration, here Plaintiff, "bears the burden of proving that he is a member of a class of workers engaged in interstate commerce." *Davis v. Cintas Corp.*, Civ. No. 18-01200, 2019 WL 2223486, at *7 (W.D. Pa. May 23, 2019).

Plaintiff argues that he was engaged in the movement of goods in interstate commerce, and as such he falls within the exception to the FAA. (ECF No. 24-5 at 10-11.) Defendant argues that this exemption is limited, Plaintiff was not a worker engaged in interstate or foreign commerce exempted from the FAA, and his work was purely intrastate. (ECF No. 24-1 at 28-31.) Defendant also contends that even if Plaintiff falls within the exemption to the FAA, the MAA remains enforceable under the New Jersey Arbitration Act (NJAA). (*Id.* at 31-33; ECF No. 24-7 at 3-4.)

Plaintiff does not specifically define the "class of workers" he purports to be a member of besides generally asserting that he is a "transportation worker."[6] (*See* ECF No. 24-5 at 10-11.) As the Supreme Court has explained, the language of the FAA exemption "focuses on the *performance* of work rather than the industry of the employer." *Bissonnette*, 601 U.S. at 247 (emphasis added) (internal quotation marks omitted); *see also Saxon*, 596 U.S. at 456. Plaintiff was an Assistant Branch Manager and Branch Manager for Defendant. (ECF No. 24-1 at 9.) Based on the job descriptions in the record, the duties and responsibilities for an Assistant Branch Manager include verifying daily cash reconciliation, determining facility and equipment needs, managing inventory

---

[6]    In *Circuit City Stores, Inc. v. Adams*, the Supreme Court used the term "transportation workers" to generally refer to the third category of worker exempted from the FAA under § 1, "any other class of workers engaged in foreign or interstate commerce." 532 U.S. at 112 (quoting 9 U.S.C. § 1).

10

and operations, promoting safety within the branch, and managing relationships with branch customers. (ECF No. 24-2 at 79-80.) A Branch Manager shares many of the same responsibilities as an Assistant but is also tasked with ensuring branch profitability, implementing strategies for branch growth, devising and implementing operations procedures, organizing and maintaining the branch and warehouse layout, and working with outside sales representatives. (*Id.* at 82-83.) Based on his job responsibilities, Plaintiff is a member of a class of branch managers overseeing facility operations.

Second, the Court considers whether Plaintiff's class is engaged in interstate commerce. *See Saxon*, 596 U.S. at 455. The Court holds that it is not. For an employee to be exempted from the FAA, "any such worker must at least play a direct and 'necessary role in the free flow of goods' across borders" or be "actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 458 (quoting *Cir. City Stores, Inc.*, 532 U.S. at 121). Cargo loaders are transportation workers, *see id.*, as are "truck drivers, bus drivers, and similar occupations," *Davis*, 2019 WL 2223486, at *8. But "[a]s an employee's duties become more attenuated from the actual flow of goods across state lines, courts are less likely to conclude that that employee's job is so 'closely related' to interstate commerce so 'as to be in practical effect part of it.'" *Id.* (quoting *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Loc. 437*, 207 F.2d 450, 452 (3d Cir. 1953)). The Third Circuit has emphasized "that a class of workers comes within the exception only if interstate movement of goods or passengers is a central part of the job description of the class." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 557 (3d Cir. 2023), *as amended* (May 4, 2023) (internal quotation marks omitted).

Plaintiff argues that as Branch Manager for Defendant, "he was actively and directly responsible for managing the logistics, storage, and distribution of goods (pool supplies and

11

materials) for a national company . . . that operates across state lines" and his duties "included hands-on engagement with the fleet and cargo and necessarily involved coordinating the interstate transportation of defendant's products." (ECF No. 24-5 at 11.)  In support of this assertion Plaintiff relies upon records of invoices from Defendant, which show sales to customers in New Jersey as well as other states.  (*Id.* (citing ECF No. 24-6 at 66-109).)  Also before the Court are Plaintiff's responses to Defendant's Second Set of Interrogatories, in which Plaintiff asserts that "defendant self-identifies as an inter-state commerce business" and "[c]onsidering that the plaintiff supervised day-to-day operations of the Lakewood, New Jersey facility, he is a transportation worker exempt from the [FAA]."  (ECF No. 24-2 at 33-34; ECF No. 24-6 at 39-40 (same).)  Plaintiff also states that he was involved in at least one interstate delivery of product and "loaded and directed drivers" for other interstate deliveries.  (ECF No. 24-2 at 33-34; ECF No. 24-6 at 39-40 (same).)  However, also before the Court are Defendant's Responses to Plaintiff's Second Set of Interrogatories, where Defendant asserts that while the branch where Plaintiff was employed did ship products out of state, "Plaintiff was not responsible for transporting any goods at any time during the course of his employment," and 90% of shipments resulting from purchases at Plaintiff's branch were delivered within New Jersey. (ECF No. 24-2 at 53-54.)  Defendant argues that Plaintiff's job responsibilities confirm he was not a transportation worker subject to the FAA exception.  (ECF No. 24-1 at 28-31.)  In support of its argument, Defendant references the job descriptions for the positions of Assistant Branch Manager and Branch Manager, the positions Plaintiff held.  (ECF No. 24-2 at 79-80; *id.* at 82-83.)  These documents—which are not disputed or discussed by Plaintiff—do not list loading, supervising, or otherwise managing activities in interstate commerce but instead focus on responsibilities related to the operations of the branch itself.  (*Id.* at 79-80, 82-83.)

"The transportation worker exception in 9 U.S.C. § 1 is intended to be narrowly construed." *Davis*, 2019 WL 2223486, at *7. The record before the Court does not indicate that Plaintiff's work was "closely related" to interstate commerce. The Court must focus on "the 'actual work' that class members 'typically carry out.'" *Singh*, 67 F.4th at 559. Although Plaintiff contends that he was involved in the loading and unloading of at least one product for delivery in another state, (ECF No. 24-2 at 33), his job responsibilities appear to be largely managerial and concerned with the operations at the New Jersey branch where he was employed, (*see id.* at 79-80, 82-83). The only affirmative evidence that Plaintiff engaged in activities relating to the transport of goods in interstate commerce originates from his own interrogatory responses. (ECF No. 23-5 at 7-8; ECF No. 23-6 at 39-40.) This alone is insufficient, and furthermore it is disputed by evidence provided by Defendant. *Prall v. Bocchini*, Civ. No. 10-1228, 2016 WL 1222263, at *6 (D.N.J. Mar. 29, 2016) ("[C]onclusory allegations in [the plaintiff's] interrogatories cannot withstand a motion for summary judgment in the absence of further support. When considered with the other evidence before the Court, no rational factfinder could credit those statements.") (citations omitted).

While the invoices relied upon by Plaintiff do show that Defendant delivered products to customers in other states, it is unclear which, if any, of these deliveries Plaintiff was involved in. (*See* ECF No. 24-5 at 7-8, 11; ECF No. 24-6 at 66-109.) The fact that an employer may engage in interstate commerce does not per se establish that a plaintiff's specific work for that employer is "closely related" to interstate commerce. *See, e.g.*, *Tenney Eng'g, Inc.*, 207 F.2d at 453 (holding that "employees . . . engaged in the production of goods for subsequent sale in interstate commerce," were not exempted from the FAA because "while their activities will undoubtedly affect interstate commerce they are not acting directly in the channels of commerce itself"); *Montgomery v. Earth Tech Remediation Servs.*, Civ. No. 99-5612, 2000 WL 276101, at *2 (E.D.

13

Pa. Feb. 29, 2000) ("[E]mployees engaged in the manufacture of goods for sale in interstate commerce as well as those employed as mortgage consultants and securities dealers are not working in interstate or foreign commerce within the meaning of the FAA."). And even if a class of workers engages in tasks related to interstate commerce on occasion, as Plaintiff may have, the Third Circuit has found that those "incidental" tasks do not exempt workers from the FAA when they are not a central part of the actual work typically performed by that class. *See Singh*, 67 F.4th at 560-61 (finding class of rideshare drivers not exempted from the FAA because although they provide "local rides that sometimes—as a happenstance of geography—cross state borders," if you "[r]emove interstate commerce from the equation, [] the work of Uber drivers remains fundamentally the same. [The p]laintiffs have not shown that drivers' infrequent interstate trips are, on the whole, an essential part of their job.").

As such, the Court finds that Plaintiff is not part of a "class of workers" exempted from the FAA. The FAA governs the MAA, and the Court will respect the FAA's liberal federal policy favoring arbitration.[7]

## B.    Validity of the MAA

After finding the FAA applies to the parties' agreement, a court must "ensure that a valid arbitration agreement between the parties exists and that the dispute falls within the substantive scope of the agreement." *Seus v. John Nuveen & Co.*, Civ. No. 96-5971, 1997 WL 325792, at *3 (E.D. Pa. June 2, 1997), *aff'd,* 146 F.3d 175 (3d Cir. 1998). However, parties may agree to have

---

[7]    Because the Court finds that the FAA governs the MAA, it is not necessary to address Defendant's alternative argument that the MAA is enforceable under the NJAA. (ECF No. 24-1 at 31-33.) However, the Court notes that the NJAA—which "is nearly identical to the FAA and enunciates the same policies favoring arbitration"—has been found to apply even if workers are found to be "transportation workers" exempted from the FAA. *See, e.g.*, *Arafa v. Health Express Corp.*, 233 A.3d 495, 498, 506-07 (N.J. 2020).

certain threshold questions about arbitrability decided by an arbitrator rather than a court; to do so, the arbitration agreement need only include a delegation clause specifying as much. *Singh*, 939 F.3d at 215. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Where such a clause is included, courts cannot decide threshold questions of arbitrability 'unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable.'" *Singh*, 939 F.3d at 215 (alterations in original) (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)). The MAA includes such a delegation clause, which delegates "exclusive authority" to an arbitrator resolve "any dispute relating to the interpretation, applicability, enforceability, or waiver of this Agreement." (ECF No. 24-3 at 12.)

Because the MAA includes a delegation clause and Plaintiff has not challenged the validity of that clause, the Court can only consider whether there is a valid arbitration agreement between the parties. If there is a valid agreement to arbitrate, the delegation clause requires that an arbitrator decide other questions regarding arbitrability such as the enforceability and scope of the agreement. *See Henry Schein, Inc.*, 586 U.S. at 69 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Dorset v. United Healthcare Servs., Inc.*, Civ. No. 23-21749, 2025 WL 2779224, at *7 (D.N.J. Sep. 30, 2025) ("[E]ven where a delegation clause exists, if the challenging party 'resists arbitration on grounds that it never agreed to arbitrate at all' the court retains the 'primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision[.]'") (quoting *MZM Constr. Co., Inc.*, 974 F.3d at 401, 402).

15

Defendant argues that the MAA constitutes a valid agreement to arbitrate. (ECF No. 24-1 at 18-25.) Defendant asserts that Plaintiff agreed to be bound by the MAA by digitally executing the agreement in his Workday account and contends Plaintiff's argument that another employee inadvertently executed the MAA from Plaintiff's account is without merit. (*Id.* at 19-21.) Defendant further argues that even if Plaintiff did not expressly agree to the MAA, he agreed to be bound by continuing his employment with Defendant and continued employment is adequate consideration to support an agreement to arbitrate under New Jersey law. (*Id.* at 21-25.) Plaintiff responds that Defendant has not met its burden to prove mutual consent to arbitrate, the electronic signature executing the MAA is not attributable to Plaintiff and does not evidence any intent to be bound, and the MAA's inclusion of "general language regarding constructive acceptance does not vitiate the requirement of a knowing and voluntary agreement to waive a fundamental constitutional right to a jury trial." (ECF No. 24-5 at 8-10.) The Court considers these arguments in turn.

Courts "apply ordinary state-law principles of contract law to determine whether parties agreed to arbitrate." *Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023) (internal quotation marks omitted). Generally, "a federal court sitting in diversity must apply the substantive law of the forum state in deciding questions pertaining to the construction and enforcement of contracts." */Alert Mktg., Inc. v. Drinkwine*, Civ. No. 16-00397, 2017 WL 2960798, at *5 (D.N.J. May 11, 2017). As such, the Court will apply New Jersey contract law here.[8] Additionally, "[a]

---

[8] Neither party has briefed the issue of choice of law. Plaintiff is a New Jersey resident (ECF No. 1 ¶ 9) and, despite being a Delaware corporation with its principal place of business in Texas (*id.* ¶ 10), Defendant operated a branch in New Jersey, (ECF No. 24-1 at 9). Both parties cite to and apply New Jersey law in their briefs. (*See generally* ECF Nos. 24-1, 24-5, 24-7.) As such, "the [c]ourt concludes that New Jersey law applies to the issue of contract formation underlying the instant motion." *James v. Glob. Tel\*Link Corp.*, Civ. No. 13-4989, 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016) (applying New Jersey law when several plaintiffs were New Jersey

district court will compel arbitration only where there is no genuine issue of fact concerning the formation of the agreement to arbitrate."[9]   *Zemel v. Citibank*, Civ. No. 16-03976, 2016 WL 6139912, at \*1 (D.N.J. Oct. 20, 2016) (internal quotation marks omitted).

Under New Jersey law, when considering whether parties agreed to arbitrate, the court must evaluate "(1) whether the relevant waiver-of-rights provision reflects an unambiguous intention to arbitrate a claim; and (2) if so, whether the record before the court indicates that plaintiff clearly had agreed to that provision."  *Sarbak v. Citigroup Glob. Markets, Inc.*, 354 F. Supp. 2d 531, 538 (D.N.J. 2004).  The MAA contains an unambiguous intention to arbitrate, providing that "ALL DISPUTES COVERED BY THIS AGREEMENT SHALL BE DECIDED BY AN ARBITRATOR THROUGH FINAL AND BINDING ARBITRATION AND NOT BY WAY OF COURT, JURY TRIAL OR ANY OTHER ADJUDICATORY PROCEEDING" and "this Agreement applies to any and all existing or future disputes between you and the Company so that you are bound to arbitrate all disputes, including any claims and disputes regarding your recruitment, employment and/or separation of employment with the Company," excepting only limited claims as specified in the MAA.  (ECF No. 24-3 at 11 (emphasis in original).)  "This language easily satisfies the requirement that such clauses provide an unmistakable conveyance of an employee's willingness

---

residents and although defendants were incorporated and had their principal place of business in other states, they provided their services in New Jersey), *aff'd sub nom. James v. Glob. TelLink Corp*, 852 F.3d 262 (3d Cir. 2017).

[9]      "Where genuine issues of material fact exist, a court must proceed to a summary trial of that issue.  At trial, each party would have the right to a jury.  In deciding whether genuine issues of material fact exist, the party opposing a motion to compel arbitration has the benefit of all reasonable doubts and inferences, just as that party would if subject to a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure."  *Adkins v. Sogliuzzo*, Civ. No. 09-1123, 2010 WL 502980, at \*3 (D.N.J. Feb. 9, 2010) (citations omitted).

to waive his or her statutory remedies." *See Sarbak*, 354 F. Supp. 2d at 538.  The parties' dispute thus centers around whether Plaintiff clearly agreed to the MAA.

"Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Glob. TelLink Corp*, 852 F.3d 262, 265 (3d Cir. 2017) (alteration in original) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014)).  When considering an agreement to arbitrate, "courts take particular care in assuring the knowing assent of both parties to arbitrate." *Atalese*, 99 A.3d at 313 (internal quotation marks omitted).  "To manifest assent, an offeree must provide 'unqualified acceptance,' which can be express or implied by conduct." *James*, 852 F.3d at 265-66 (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).  Defendant first argues that Plaintiff manifested assent by digitally executing the MAA on November 13, 2023. (ECF No. 24-1 at 19.)  While Plaintiff does not dispute that Workday records show Plaintiff's account executed the MAA at 8:04 a.m. on November 13, 2023, (ECF No. 24-3 at 43.), he argues that this execution is invalid because (1) Plaintiff had previously deliberately chosen not to execute the MAA and (2) Plaintiff denies executing the document himself, meaning that he did not express intent to contract (ECF No 24-5 at 8-9).

"New Jersey law does not require a physical signature for there to be a valid agreement and courts will bind parties to arbitration agreements entered into online, such as via 'clickwrap' agreements." *Falk v. Aetna Life Ins. Co.*, Civ. No. 19-00434, 2019 WL 4143882, at *4 (D.N.J. Aug. 31, 2019).  As such, checking the "I Agree" box in Workday in response to Defendant's notification regarding the MAA would suffice to manifest Plaintiff's intent to execute the MAA.

Plaintiff instead focuses his argument on the assertion that he was not the individual who checked the box and thus never intended to execute the MAA. [10]

Plaintiff argues that new hire Lyndsey Boyle inadvertently executed the document within Plaintiff's Workday account when Plaintiff walked her through documents necessary to begin her employment with Defendant.  (ECF No. 24-5 at 9[11]; ECF No. 24-6 at 90:15-25; ECF No. 24-2 at 31:1-15, 44:1-24.)  But as Defendant points out, other evidence in the record contradicts this testimony.  Boyle testified that during onboarding with Plaintiff on November 13, she did not use his computer, he did not show her anything on his computer, and she did not enter any information on his computer.  (*See* ECF No. 24-2 at 26:2-13.)  Plaintiff does not dispute that employees have their own Workday accounts, and he was logged into his Workday account on November 13, 2023. (*See* ECF No. 24-1 at 12; ECF No. 24-5 at 5.)

"In considering a motion to compel arbitration, the Court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the

---

[10]     Plaintiff cites the New Jersey Uniform Electronic Transactions Act (UETA) in support of his argument that his acceptance of the MAA is not valid.  (ECF No. 24-5 at 9.)  This argument is unavailing.  The UETA "governs transactions between parties who have agreed to conduct their transaction by electronic means," *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013), and provides that electronic documents and signatures can uphold a contract, N.J. Stat. Ann. § 12A:12-7.  The UETA also considers clickwrap signatures such as the ones made by Workday valid.  *See Forsyth v. First Trenton Indem. Co.*, Civ. No. A-5080-08T2, 2010 WL 2195996, at *7 (N.J. Super. Ct. App. Div. May 28, 2010) (explaining that the definition of "electronic signature" under the UETA "includes as an electronic signature the standard webpage click through process" and "the electronic signor's active participation and demonstrated willingness to deal with that company reflects the signors 'intent to sign the record'"); *Shelton*, 70 A.3d at 556 ("According to the UETA, a contract cannot 'be denied legal effect . . . solely because an electronic record was used in its formation.'") (citing N.J. Stat. Ann. 12A:12-7(b)).

[11]     Plaintiff cites to his deposition transcript, excerpts of which are filed in ECF No. 24-6. However, the page Plaintiff references, page 117 stamped on the transcript by the Court Reporter, is not part of the record and the Court cannot consider it.  (*See* ECF No. 24-6 at 4-32 (excerpted pages from Plaintiff's deposition transcript).)

non-moving party." *InterDigital Commc'ns Corp. v. Fed. Ins. Co.*, 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005). Here, the non-moving party is Plaintiff. However, the only evidence Plaintiff proffers in support of his argument that he did not in fact execute the MAA is his own testimony.[12] (ECF No. 24-5 at 9.) This evidence, considered with the other contrary evidence in the record—such as Boyle's own testimony contradicting Plaintiff—is not enough to create a genuine dispute of material fact to render the compulsion of arbitration improper. *See, e.g.*, *Simpson v. Prince Telecom, LLC*, Civ. No. 14-1211, 2017 WL 1206403, at *7 (D. Del. Mar. 31, 2017) ("Plaintiff's own testimony, unsupported by the record as a whole, is insufficient to establish a genuine issue of material fact."), *report and recommendation adopted,* 2017 WL 1454995 (D. Del. Apr. 21, 2017); *Vu v. Kott*, Civ. No. 23-3336, 2026 WL 624160, at *7 (E.D. Pa. Mar. 5, 2026) ("No other evidence supports [the plaintiff's] allegation that [the defendant] made these comments. [The plaintiff's] testimony, without more, is not sufficient to create a genuine issue of material fact."); *Pierre v. Kumar*, Civ. No. 18-5288, 2019 WL 13249012, at *1 (E.D. Pa. Dec. 11, 2019) ("A 'conclusory, self-serving' sworn statement is not sufficient to create a genuine issue of material fact 'where that assertion is impeached by a well supported showing to the contrary.'") (quoting *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012)). And even if the Court were to find that Plaintiff executed the MAA due to a mistake when onboarding Boyle, "a contract may not be rescinded where a unilateral mistake occurred 'as a result of the mistaken party's own negligence.'" *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 674 (D.N.J.

---

[12]    In Plaintiff's Responses to Defendant's First Set of Interrogatories, also in the record, Plaintiff also asserts that it was Boyle who signed the MAA through Plaintiff's Workday account. (ECF No. 24-2 at 24-26.) However, Plaintiff does not cite to this document in his briefing and interrogatories alone "cannot withstand a motion for summary judgment in the absence of further support." *Prall*, 2016 WL 1222263, at *6.

2015) (quoting *Weisman v. New Jersey Dep't of Hum. Servs.*, 982 F. Supp. 2d 386, 395 (D.N.J. 2013), *aff'd,* 593 F. App'x 147 (3d Cir. 2014)).

Further, even if the Court were to find that Plaintiff did not execute the MAA, Plaintiff manifestly assented to the MAA by continuing to work for Defendant.  Plaintiff argues that "any general language regarding constructive acceptance does not vitiate the requirement of a knowing and voluntary agreement to waive a fundamental constitutional right to a jury trial" and "[f]orcing an agreement through the doctrine of constructive acceptance, especially where the plaintiff actively refused assent, violates the principles of contractual fairness and New Jersey public policy."  (ECF No. 24-5 at 10.)  Plaintiff does not cite caselaw in support of these assertions. Defendant argues that "so long as the employee is notified of the offer, failure to opt out of the arbitration through inaction was a proper method to assent."  (ECF No. 24-1 at 21-22 (quoting *Levy v. AT&T Services, Inc.*, 2022 WL 844440 at *4 (D.N.J. Mar. 22, 2022).)  The Court agrees.

Under New Jersey law, "continued employment has been found to constitute sufficient consideration to support certain employment-related agreements."  *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 879 (N.J. 2002).  Defendant informed Plaintiff of the implementation of the MAA multiple times in October, and indicated "[c]urrent employees who choose to work for the Company after thirty days from the date when the MAA is sent to them will be deemed to have accepted the arbitration agreement and be subject to all of the terms and conditions stated in the MAA."  (ECF No. 24-1 at 22; ECF No. 24-3 at 36, 37.)  The Workday notification sent to employees explicitly stated "[y]our decision to continue your employment with SRS/ Heritage for 30 days after being provided this notice and the attached Arbitration Agreement means that you are accepting this Arbitration Agreement even if you do not click 'I Agree.'"  (ECF No. 24-3 at 45.)  The MAA itself specifies that "[e]mployment or continued employment is contingent on

acceptance of this Agreement.  Employee accepts this Agreement by accepting employment with the Company, or by continuing employment with the Company for 30 days after the Company provides notice of this Agreement[.]" (*Id.* at 15.)  Plaintiff does not dispute that he received these notifications.  (*See* ECF No. 24-2 at 72:14-73:5; ECF No. 24-6 at 20:18-21:21.)  In similar cases, courts have repeatedly held that a plaintiff's continued employment after receiving notification of an arbitration agreement manifested assent, and the Court finds Plaintiff's conduct here also indicates assent to the MAA.  *See, e.g.*, *Marley v. PricewaterhouseCoopers LLP*, Civ. No. 21-14280, 2022 WL 500579, at *5 (D.N.J. Feb. 18, 2022) ("Given [p]laintiff was on notice of the [a]rbitration [a]greement, and [defendant] unambiguously explained that [p]laintiff's continued employment would constitute assent to the [a]greement, the [c]ourt finds [p]laintiff manifested the requisite assent."); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 956-57 (N.J. 2020) (affirming that arbitration agreement was valid and binding where "the employee assented to the [a]greement in accordance with [the defendant's] designated method of expressing assent -- her continued employment for an additional sixty days after she received the [a]greement"); *Levy*, 2022 WL 844440, at *5 ("In light of the proper notification and [the p]laintiff's failure to opt out of the [a]greement by the prescribed date in the notification emails, [the court] find[s] that he assented to the terms of the [a]rbitration [a]greement.").  Plaintiff's mistaken belief that the automatic acceptance of the MAA within 30 days would not be enforceable under New Jersey law (ECF No. 24-2 at 63:10-17) does not disrupt this conclusion.  A party's "misunderstanding of the bargain to which []he consented does not render that bargain unenforceable." *Oliver v. Nordstrom King Of Prussia*, Civ. No. 10-5340, 2010 WL 5121966, at *3 (E.D. Pa. Dec. 14, 2010); *see also id.* ("While [the plaintiff] may have misunderstood what the agreement encompassed, that does not provide a basis for ignoring the uncontroverted fact that she signed multiple documents in which she

22

assented to arbitrate certain claims against [the defendant] and admitted that she was informed of the company's dispute resolution program.").

Given that the evidence before the Court does not raise a genuine dispute of material fact to whether Plaintiff executed the MAA and that the evidence shows that regardless of the execution, Plaintiff assented to the MAA by conduct, the Court finds that the MAA is a valid agreement to arbitrate between the parties. However, because the MAA delegates disputes regarding the "interpretation, applicability, enforceability, or waiver of this Agreement" to an arbitrator, (ECF No. 24-3 at 12), and Plaintiff has not challenged the validity of this clause, (*see* ECF No. 24-5), the parties' disputes as to the scope and enforceability of the MAA must be delegated to the arbitrator. *See Singh*, 939 F.3d at 215; *Henry Schein, Inc.*, 586 U.S. at 69.

### C.    Stay Pending Arbitration

Lastly, Defendant argues that pursuant to the FAA, this action should be stayed pending arbitration. (ECF No. 24-1 at 33-34.) The Court agrees. "Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (quoting 9 U.S.C. § 3). Accordingly, the Court stays this proceeding pending arbitration.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Compel Arbitration (ECF No. 24-1) is **GRANTED**. An appropriate Order follows.

Dated: April 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

23